IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiffs,<br><br>vs.<br><br>ABAS YASSIN ALI,<br><br>Defendants. | 8:22CR129<br><br>FINDINGS AND RECOMMENDATION |

This matter is before the Court on Defendant's Motion to Suppress (Filing No. 140). A hearing regarding the motion was held on August 30, 2023. A transcript of the proceedings has been filed and the matter is now ripe for disposition.

For the reasons explained below, the undersigned will recommend that the motion be denied.

### FACTS

Sarpy County Sheriff Investigator Melissa White ("Investigator White") testified at the evidentiary hearing held in this case. Investigator White testified that in February 2022, she became the primary lead detective in an investigation of vehicle burglaries and firearm fraud in the Omaha metro area. (TR. 4-5.) Investigator White stated this was her first time serving as the primary investigator in an investigation of this nature, but that she was involved in these types of investigations as a road patrol deputy. (TR. 5.) Investigator White testified that she collaborated with investigators from the metro area, including the Omaha Police Department, Bellevue Police Department, Council Bluffs Police Department, Pottawattamie County Sheriff's Office, Mills County Sheriff's Office, and the FBI during the investigation. (TR. 4.) Investigator White stated

that analysts and other individuals assisted with the investigation, which is common in her training and experience. (TR. 4.)

Investigator White testified that at the time she was assigned to the investigation, the Sarpy County Sheriff's Office had been provided information from an analyst with the Bellevue Police Department. (TR. 6.) The analyst had identified Defendant as a potential suspect. (TR. 6; TR. 64; Ex. 1.) Investigator White stated that the information from the analyst was a starting point for how she progressed the investigation and how she developed a complete investigation over time. (TR. 6.) Investigator White testified that she knew who the analyst was, spoke to him, and considered him to be credible. (TR. 63.) Investigator White stated that she used the analyst's information to continue her investigation by collaborating with him, along with the Sarpy County Sheriff's Office's analyst. (TR. 63.)

Investigator White testified that as the investigation continued, investigators were able to link suspects to another series of thefts with a similar M.O., starting with a case from January 2021. (TR. 8.) Investigator White stated that a few of the suspects had been apprehended as part of the investigation in January 2021. Investigator White testified that Defendant was not arrested in connection with the initial incident from January 2021. (TR. 59-60; Ex. 3.)

Investigator White explained the nature of the crimes involved in her investigation. (TR. 16.) She stated that during the crimes, a group of suspects would go out in the late hours of the night or very early hours of the morning and break into cars throughout a neighborhood. (TR. 16.) A vehicle of suspects would linger and drive slowly with no headlights, while other suspects ran from car to car in driveways or along the street checking to see if vehicles were unlocked. (TR. 16.) When the suspects found an unlocked vehicle, they would take anything of value from inside it, particularly debit cards, credit cards, driver's licenses, Social Security cards, purses, wallets, laptops, electronics, tablets, headphones, and firearms. (TR. 16.) After that, the suspects would go to a Walmart and use the stolen cards to purchase prepaid Visa cards, and then use those cards to purchase Western Union money orders from a Baker's store, and deposit them into bank accounts. (TR. 13-14; TR. 16-17; Tr. 39-40.)

Investigator White testified that during the investigation, another investigator with experience with financial crimes did a financial analysis and examined bank records to determine

where the stolen cards were used. (TR. 13-14.) Investigator White stated that the investigator looking into the financial aspect communicated important information to her. (TR. 13-14.) This information included that the money orders were deposited via mobile deposit into Defendant's bank account at Veridian Credit Union. (TR. 14; TR. 34; Ex. 8.) The phone number associated with that bank account belonged to Defendant.[1] (TR. 14-15.) Investigators also determined that Defendant used that phone number to service a vehicle that was depicted in Defendant's social media posts and was consistent with a vehicle that investigators had seen in security videos. (TR. 15; TR. 18.)

Investigator White testified that during the investigation, investigators also looked at Defendant's social media posts, which included videos and photos that were posted for a public audience. (TR. 35; TR. 37; Ex. 9.) Investigator White explained they were able to identify Defendant's social media account by linking other information in the investigation, such as other suspects and their social media accounts, and then going through Defendant's account. (TR. 53-55.) Investigator White stated investigators were looking at the posts for anything depicting stolen property or transactions with the stolen cards. (TR. 36.) Investigator White testified that there were several posts depicting things like withdrawals from Defendant's bank account and vehicles that had been linked to him. (TR. 37; Ex. 9.) She testified that investigators also saw what appeared to be guns stolen in the crime spree and money orders that appeared to be from Western Union. (TR. 39; Ex. 9.) Investigator White explained that one segment of video from Defendant's social media account was taken in front of a vehicle dealership in Omaha. (TR. 37.) Investigators contacted the dealership and were able to get information about the person in the video, based on the date of the post and the vehicle involved. (TR. 37.) There were also posts on social media inviting people to conduct financial transactions with Defendant. (TR. 40; Ex. 9.) Investigator White testified there was also clothing depicted on social media that was consistent with clothing worn by a suspect seen on surveillance footage. (TR. 40; Ex. 11.)

Investigator White testified that through a review of surveillance footage and in looking at Defendant as a suspect, investigators were able to identify a white, 2012, two-door Audi A5, with

---

[1] It was the phone number for which investigators later sought a warrant. (TR. 14-15; Ex. 1.)

Nebraska license plates WWZ876, as being involved in the thefts. (TR. 21; Ex. 1.) Investigator White testified that the license plate number of the Audi was not seen in the surveillance footage. (TR. 33.) Investigator White testified that investigators were able to identify the Audi because it had been involved in a pursuit with the Omaha Police Department. (TR. 21; TR. 28.) The Audi crashed during the pursuit and a stolen laptop was located inside it. (TR. 21-22.) The serial number on the laptop showed that the laptop had been stolen during one of the thefts involved in the investigation. (TR. 22.) Defendant was the driver of the Audi at the time of the crash and an additional suspect involved in the investigation was also inside the Audi. (TR. 22.) The Audi was registered to Defendant. (TR. 29.) Investigator White testified the Audi was consistent with security videos of vehicles from the thefts. (TR. 29; Ex. 7.) Investigator White stated that when she uses the word "consistent," she is referring to the make and model, as well as distinct features on a vehicle. (TR. 30.) Investigator White testified that in this case, the Audi had distinct bumps on its roof. (TR. 30-31; Exs. 5, 6, 7.)

Investigator White testified that investigators also learned of another instance in which Defendant pawned a stolen camera at a pawnshop using LeadsOnline, which is a nationwide record database for pawns. (TR. 22-23.) Using LeadOnline, law enforcement can obtain an I.D. from a person who pawns an item, as well as images of the pawned item and the person who pawned it. (TR. 24; Ex. 2.) Investigator White stated the camera was stolen in a string of thefts that investigators had linked to the investigation that occurred on or about January 4th and 5th 2021. (TR. 22; Ex. 2.)

On April 6, 2022, Investigator White prepared an affidavit seeking "All records associated with mobile number(s) 14029174123 for the dates of Monday, January 4, 2021 from 2200 hours (CST) to Tuesday, April 5, 2022, at 1300 hours (CST)." (Ex. 1.) Her affidavit set out information related to the investigation, including, but not limited to, the following:

- Investigator White was investigating multiple theft and suspicious activity reports in Sarpy County.
- Initial incident reports had been taken by road patrol from the Sarpy County Sheriff's Office. The reports reference thefts, attempted thefts, and suspicious activity that occurred in the overnight/early morning hours starting as early as January 5, 2021, continuing to the date of the affidavit.
- Sarpy County Sheriff's Office analysts had been working with Bellevue, Omaha, and Council Bluffs police departments to develop suspect information for the thefts.

4

- The Sarpy County Sheriff's Office's intelligence analysis linked several incident reports regarding thefts from vehicles.
- The M.O. of the thefts involved suspects going down streets while a suspect vehicle lingered nearby. The suspects checked vehicles for unlocked doors and then stole various items from unlocked vehicles, including cred/debit cards that were later used at a Walmart.
- A suspect vehicle had been identified as a white, 2021, 2-door Audi A5, with Nebraska plates WWZ876, and that the vehicle was registered to Defendant, who had been identified as a suspect.
- Defendant's information was provided by Bellevue Police Department's Intelligence Analyst after seeing video related to one of the thefts. The analyst advised that the suspect vehicle and M.O. matched that of Defendant and his associates.
- A Bellevue Police Department Intelligence Analyst provided information for Defendant's Audi, and a 4-door grey BMW and silver 4-door Mercedes. The VIN for the Mercedes was obtained by Omaha Police Department patrol units. The Audi and grey BMW were registered to Defendant.
- Defendant was identified in other related thefts. In one such theft, a camera was stolen from a vehicle. Defendant pawned the stolen camera.
- Defendant was arrested on October 21, 2021 following a vehicle pursuit in his Audi. A laptop associated with one of the thefts was found in the Audi.
- A vehicle consistent with Defendant's Audi was observed in video of the suspects taken during the theft of a firearm.
- Defendant's Instagram account username had been identified. A Bellevue Police Department Intelligence Analyst provided a Sarpy County Sheriff's Intelligence Analyst with information for an additional suspect's Instagram account, which allowed investigators to identify Defendant's Instagram account.
- On February 16, 2022, a Sarpy County Sheriff's Intelligence Analyst observed publicly-available Instagram videos on Defendant's account starting around January 11, 2022 depicting a bank transaction, an iPhone in the seat pocket of a vehicle, an envelope of cash with a phone showing a date in January, a Walmart transaction, people flashing large amounts of cash, a gray BMW on a trailer at a BMW dealership, cash and a receipt that appeared to have Defendant's signature on it, and an ATM transaction at a Veridian Bank. Defendant's Instagram posts referenced an underground marketplace for dumping credit cards.
- A video segment of a Walmart transaction from approximately five weeks earlier showed a black male and female obtain a large amount of cash from a Walmart clerk and a partially visible receipt. A Walmart Global Security Investigator determined the transaction was a wire transfer. The receiver's name provided was that of Defendant's brother. The date of the transaction was January 13, 2022. The recipient got into a black or dark grey sedan.
- Investigators identified the BMW dealership observed in the publicly available video on Defendant's social media posts. Investigator White contacted the dealership and was advised that the vehicle belonged to Defendant and that Defendant's phone number was 14029174123.
- Defendant's bank records from Veridian had been obtained. Veridian provided 14029174123 as the phone number associated with Defendant's account.

- Defendant and his associates had been identified as suspects in numerous thefts, unauthorized use of financial device transactions and purchases using counterfeit currency.
- Records from Defendant's bank accounts showed several mobile deposits of money orders obtained from Omaha Baker's stores. Several of the prepaid debit cards purchased through the unauthorized transactions were used at the same Omaha area Baker's stores.
- U.S. Cellular was identified as the service provider for phone number 14029174123.
- Investigator White had reason to believe that an authorized search warrant for the cell phone records associated with 14029174123 would obtain evidence for the offense of Theft by Unlawful Taking (NRS 28-511) and Unauthorized Use of a Financial Transaction Device (28-620) which are violations of Nebraska statutes.

(Ex. 1.)

Investigator White testified that there were incident reports taken by other law enforcement officials during her investigation that she reviewed to prepare the affidavit. (TR. 46-47; Ex. 3.) Investigator White acknowledged that, in her affidavit, she did not specifically identify the analysts who reviewed the social media accounts or the individual through whom investigators were able to link Defendant to a social media account. (TR. 55.) Investigator White testified that the date range in the affidavit was selected based on the first case investigators were able to link to the investigation, which was the string of thefts that occurred during the late evening of January 4, 2021, or the early morning hours of January 5, 2021. (TR. 44.) Investigator White testified the date range went up to April 5, 2022, because the thefts had been continuous. (TR. 44.)

Investigator White stated that after she prepared the affidavit and draft warrant, she emailed them in a single email to a Nebraska state court judge. (TR. 48; TR. 73.) Investigator White testified that it was her intention that the judge consider everything she submitted when deciding whether to issue the warrant. (TR. 73.) Investigator White testified that she did not see the judge during the process of obtaining the warrant because everything was done electronically. (TR. 48-49.) Investigator White could not recall whether she had any conversation with the judge before the warrant was issued or if the judge had questions about her affidavit. (TR. 49.) The judge issued the warrant for the search of the phone records, authorizing the search of specialized location records; call/text/data detail records; authentication information; time on tower and/or sector data; electronically stored records; carrier key; cloud storage; cell site lists for January 4, 2021, from 2200 hours CST to April 5, 2022, at 1300 hours CST; and subscriber records. (Ex. 1.)

**DISCUSSION**

Defendant argues that the warrant was not supported by probable cause and that the warrant did not set forth the items to be searched with sufficient particularity. The undersigned finds Defendant's arguments unpersuasive.

**1. Probable Cause**

Defendant contends Investigator White's affidavit did not provide a reliable, factual basis for a finding of probable cause. Defendant complains that the affidavit did not specifically identify the persons from whom information was obtained or indicate how those unidentified individuals came to believe the accuracy of the information set out in the affidavit.

To be constitutionally valid, "a search warrant must be supported by a showing of probable cause." *United States v. Summage*, 481 F.3d 1075, 1077 (8th Cir. 2007). "Probable cause to issue a search warrant exists when an affidavit in support of the warrant sets forth sufficient facts to establish that there is a fair probability that contraband or evidence of criminal activity will be found in the particular place to be searched." *United States. v. Proell*, 485 F.3d 427, 430 (8th Cir. 2007) (quotation omitted). "The determination of probable cause is made after considering the totality of the circumstances." *Proell*, 485 F.3d at 430. The decision of whether probable cause exists to issue a search warrant is "based upon a common-sense reading of the entire affidavit." *United States v. Seidel*, 677 F.3d 334, 338 (8th Cir. 2012) (quotation omitted). "[T]he probable-cause standard is a practical, nontechnical conception that deals with the factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act." *Maryland v. Pringle*, 540 U.S. 366, 370 (2003) (internal quotations omitted).

"After a judge has issued a search warrant upon a finding of probable cause, that finding deserves great deference." *Proell*, 485 F.3d at 430 (internal quotation omitted). A court "should uphold the decision to issue the warrant so long as it is supported by substantial evidence in the record." *United States v. Hallam*, 407 F.3d 942, 948 (8th Cir. 2005). "When a magistrate relies solely on an affidavit to issue the warrant, only that information which is found within the four corners of the affidavit may be considered in determining the existence of probable cause." *United States v. Farlee*, 757 F.3d 810, 819 (8th Cir. 2014) (internal quotation omitted). "Thus, a warrant must be upheld so long as the affidavit—considered in its entirety—contains sufficient facts to

establish a fair probability that contraband will be discovered in a particular place." *United States v. Maccani*, No. 20-CR-90-CJW-MAR. 2021 WL 943109, at *10 (N.D. Iowa Mar. 12, 2021).

Defendant argues the affidavit is deficient and lacks reliability because Investigator White did not specifically identify the individuals from whom she received information or the basis/sources of those individuals' knowledge. The affidavit states that the investigation was performed through the combined efforts of the Sarpy County Sheriff's Office, Bellevue Police Department, Omaha Police Department, and the Council Bluffs Police Department. The affidavit is clear that Investigator White was collaborating and communicating with these departments during the investigation. Investigator White was entitled to rely on information she received from other officers and departments and was not limited to presenting information derived from only her own contacts and observations. *See United States v. Edwards*, 891 F.3d 708, 711–12 (8th Cir. 2018) ("[P]robable cause may be based on the collective knowledge of all law enforcement officers involved in an investigation and need not be based solely upon the information within the knowledge of the officer on the scene if there is some degree of communication").

Although Investigator White's affidavit did not identify the analysts or other individuals who provided her information by name, it is clear from the affidavit that the unidentified individuals are law enforcement officials. "Police officers are considered reliable and their reliability need not be independently demonstrated." *United States v. Kunkler*, 679 F.2d 187, 190 (9th Cir. 1982). *See also United States v. Spears,* 965 F.2d 262, 277 (7th Cir. 1992) ("In determining whether probable cause exists, a magistrate is entitled to regard an affiant's fellow law enforcement officers as reliable sources"); *United States v. Guzman*, Cr. No. 13-00565, 2013 WL 6062533, at *6 (D. Haw. Nov. 15, 2013) ("Observations of other law enforcement officers engaged in a common investigation are generally a reliable basis for a warrant."). Investigator White's decision not to specifically identify the law enforcement officers involved in the investigation does not undermine the reliability of the information or negate the finding of probable cause.

Having considered each argument advanced by the parties, the undersigned finds that based on a common-sense reading of the affidavit offered in support of the warrant, the affidavit set forth sufficient facts to establish a fair probability that contraband or evidence of criminal activity would

be found in the phone records. As acknowledged by Defendant in his brief, the affidavit included documented links to Defendant, including Defendant's pawn of a camera stolen in the string of thefts and his possession of a stolen laptop. The warrant went on to explain the details of the investigation and how the phone number for which the records were sought was tied to Defendant. Specifically, the affidavit explained that Defendant's bank records identified the subject phone number as belonging to Defendant, and that Defendant's social media posts led to a car dealership which also confirmed the phone number belonged to Defendant.[2] The affidavit also explained that Defendant's bank account showed several mobile deposits of money orders obtained from Omaha Baker's stores and that several of the prepaid debit cards purchased through the unauthorized transactions were used at the same Omaha area Baker's stores. The affidavit also stated that a stolen laptop was found in Defendant's Audi, and that the Audi was consistent with a vehicle observed in surveillance video footage of a theft.[3] All this information taken together was sufficient to establish probable cause.

   2. **Overbreadth and Particularity**

Defendant contends the search warrant was overly broad and lacked particularity because it effectively authorized law enforcement to search his entire phone account, without identifying a crime defining the context in which the search was authorized or describing the items to be seized and their relationship to a specified crime. Defendant also claims the warrant lacked sufficient particularity because it requested "all records associated" with the phone number, and then noted that the requested records included things such as specialized location records; call/text/data detail records; authentication information; time on tower and/or sector data; electronically stored records;

---

[2] Defendant maintains the affidavit did not adequately explain how Defendant's social media posts were obtained. However, the affidavit explained that Defendant's social media account was located by examining the social media account of another suspect. Defendant appears to suggest that the social media information was illegally obtained without a warrant. However, Investigator White's affidavit states that the information obtained from social media was publicly available. A warrant for Defendant's publicly available social media information was not necessary.

[3] Defendant has not requested a *Franks* hearing but argues the affidavit falsely indicates that the Audi was identified by its license plate number through video evidence. However, such a sentence is not in the affidavit and a plain reading of the affidavit does not support the conclusion that was what Investigator White was attempting to convey. Investigator White clarified at the hearing that it was not her intention to convey that the Audi was identified by its license plate through the video. Based on the evidence before the Court, a *Franks* hearing is not warranted.

carrier key; cloud storage; cell site lists, subscriber records, IMEI search parameters, and IMSI search parameters.

The Fourth Amendment to the United States Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. "The constitutional standard for particularity of description in a search warrant is that the language be sufficiently definite to enable the searcher reasonably to ascertain and identify the things authorized to be seized." *United States v. Strand*, 761 F.2d 449, 453 (8th Cir.1985). "The particularity requirement is a standard of practical accuracy rather than a hypertechnical one." *Summage*, 481 F.3d at 1079 (quotation omitted).

Under the circumstances of the case, the undersigned believes the categories of items sought were sufficiently described in the warrant. The scope of the warrant was likewise appropriate because it contained a narrow temporal limitation, which was selected based on the date of the first-known related crime. What concerns the undersigned, however, is that the warrant itself did not identify the offense being investigated. In considering whether a warrant authorized an improper general "exploratory" search, the Eighth Circuit has looked to whether the offense being investigated was sufficiently identified in the warrant. *See In re Grand Jury Proceedings*, 716 F.2d 493, 497-99 (8th Cir. 1983). *See also United States v. Harris*, No. 20-cr-98, 2021 WL 4847832, at *6 (D. Minn. July 16, 2021) ("[I]n determining whether the Fourth Amendment's particularity requirement had been met, courts have also regularly focused on whether the warrant limited the information seized to the crime being investigated). Although the information regarding the crimes being investigated was contained in the affidavit, "the generality of a warrant cannot be cured by the specificity of the affidavit which supports it." *United States v. Curry*, 911 F.2d 72, 76-77 (8th Cir. 1990) (internal quotation omitted). Even though a description in a supporting affidavit can supply the requisite particularity if the warrant uses suitable words of reference to incorporate the affidavit, the warrant in this case did not do so. *Id*.

Nevertheless, the undersigned need not ultimately determine whether the warrant satisfied the Fourth Amendment's particularity requirement because, as explained below, the *Leon* good

faith exception applies. *See Harris*, 2021 WL 4847832, at *7 (applying *Leon* and declining to decide whether the particularity requirement was satisfied).

### 3. Leon Good Faith Exception

Even if the warrant was not supported by probable cause, or was overly broad or insufficiently particular, the evidence seized would nevertheless be admissible under the *Leon* good-faith exception to the exclusionary rule. "Under the good-faith exception, evidence seized pursuant to a search warrant issued by a magistrate that is later determined to be invalid, will not be suppressed if the executing officer's reliance upon the warrant was objectively reasonable." *Proell*, 485 F.3d at 430. A "good-faith inquiry is confined to the objectively ascertainable question whether a reasonably well trained officer would have known that the search was illegal despite the issuing judge's authorization." *United States v. Puckett*, 466 F.3d 626, 630 (8th Cir. 2006) (quotation omitted).

An officer's reliance on a warrant may be said to be unreasonable in four circumstances: (1) when the affidavit supporting the warrant contained a false statement made knowingly and intentionally or with reckless disregard for the truth, thus misleading the issuing judge; (2) when the issuing judge "wholly abandoned his judicial role" in issuing the warrant; (3) when it is entirely unreasonable to believe that an affidavit provides probable cause to issue a warrant; and (4) when the warrant is "so facially deficient" that no police officer could reasonably presume the warrant to be valid. *Proell*, 485 F.3d at 431 (quotation omitted). "[W]hen assessing the officer's good faith reliance on a search warrant under the *Leon* good faith exception, [courts] can look outside of the four corners of the affidavit and consider the totality of the circumstances, including what the officer knew but did not include in the affidavit. *Farlee*, 757 F.3d at 819.

Defendant contends the scope of the warrant was so facially deficient that Investigator White could not be deemed to legitimately have relied upon it.[4] The undersigned disagrees. The

---

[4] It is unclear whether Defendant is arguing that the good-faith exception does not apply based on the other three exceptions outlined above. However, there is no evidence that Investigator White's affidavit contained any false statements that misled the state court judge. As previously noted, the affidavit did not include any statement that the Audi was identified because its license plate number was seen on video footage. Further, there is no evidence that the state court judge abandoned her judicial role when issuing the warrant. Investigator White emailed both the affidavit and draft warrant to the state court judge for her review and Investigator White intended for the judge to review both these items when issuing the warrant. As also discussed above, the affidavit provided probable cause to issue the

warrant authorized the search of phone records pertaining to a specific phone number.  Defendant was a suspect in the investigation and investigators had determined that phone number likely belonged to him.  The timeframe for the phone records sought was very limited in scope—covering only about a fifteen-month-period of time.  Investigator White testified that the date range was selected based on the first case investigators were able to link to the investigation, which was the string of thefts that occurred on or about January 4, 2021. Investigator White testified the date range went up to April 5, 2022, because the thefts had been continuous to the date of her affidavit.  Under the totality of the circumstances, including what Investigator White knew but did not include in the affidavit, her reliance on the warrant was objectively reasonable and the evidence obtained should not be suppressed.

Accordingly,

**IT IS HEREBY RECOMMENDED** to Chief United States District Court Judge Robert Rossiter, Jr. that Defendant's Motion to Suppress ([Filing No. 140](Filing No. 140)) be denied.

Dated this 30th day of October, 2023.

BY THE COURT:

s/ Susan M. Bazis
United States Magistrate Judge

### ADMONITION

Pursuant to NECrimR 59.2, any objection to this Findings and Recommendation shall be filed within fourteen (14) days after being served with a copy of this Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

---

warrant, but in any event, it was not unreasonable for Investigator White to believe her affidavit supplied the requisite probable cause based on the information she possessed at the time.